# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

ANDRE MONTEEK EDWARDS,

                Petitioner,                Case Number: 2:19-CV-10376
                                                HON. DENISE PAGE HOOD

v.

THOMAS WINN,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS*

Michigan state prisoner Andre Monteek Edwards filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. He challenges convictions for second-degree murder, Mich. Comp. Laws § 750.317; felon in possession of a firearm, Mich. Comp. Laws § 750.224f; and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. He raises sixteen claims for relief (fifteen in original petition and one in a supplemental petition).[1] Respondent argues that multiple claims are procedurally defaulted and that all of

---

[1] Petitioner has also filed two motions to amend. (ECF No. 32, 36.) The Court construes the motions as motions to supplement the petition because neither seeks to add new claims for relief. Instead, Petitioner provides further argument in support of claims already raised. The Court grants both motions.

1

Petitioner's claims are meritless.  For the reasons stated, the Court denies the petition and denies a certificate of appealability.  The Court grants Petitioner leave to appeal *in forma pauperis*.

## I.  Background

Petitioner's convictions arise from the shooting death of Tyrell Lee.  The shooting occurred on October 9, 2008, in Flint, Michigan.  Police officer Thomas Tucker responded to a report of shots fired in the area of 906 East York Street.  When he arrived, he saw a man, later identified as Tyrell Lee, lying in the yard suffering from a gunshot wound to the chest.  A grey Saturn vehicle was parked in the driveway.  Tucker observed that the driver's side door was open and both the door and the driver's seat were stained with blood.  Lee was transported to the hospital where he was declared dead.

An evidence technician collected a 9 mm spent shell casing from near the right front tire of the Saturn.

Michael Johnson testified that he and his brother Rickey Johnson lived at 906 East York Street on October 9, 2008.  At about 4:00 a.m., he heard Lee yelling from outside.  When Johnson went outside he saw Lee bleeding from the chest.  The first thing Lee said was "...Yog, shot me."  (ECF No. 14-14, PageID.1184.)  Johnson testified that Petitioner was known as "Yogi" or "Yog."  (*Id.*)  Rickey

Johnson testified that after he heard the gunshot, he heard Petitioner say "don't put your ... hands on me like that."  (*Id.* at 1231.)

Petitioner was the sole defense witness.  He testified that during the early morning hours of October 9, 2008, he was walking two dogs in the area of East York Street.  It was not uncommon for him to be out in the middle of the night or for others in that neighborhood to be out then as well. He saw Lee, whom he had known for about 15 years, sitting in a Saturn SUV.  Petitioner tied his dogs up across the street and then got into the passenger side of the car.  Petitioner saw Lee reach down to the floorboard and come back up with a gun, which Lee placed on his lap.  Lee ordered Petitioner out of his car, but before Petitioner could leave Lee grabbed Petitioner's throat.  Petitioner testified that he was unable to move while Lee was choking him.  Lee then started punching Petitioner, which loosened Lee's grip on Petitioner's throat, allowing Petitioner to breathe again.  Petitioner wanted to exit the vehicle but was sure Lee would shoot him in the back.  Petitioner grabbed the gun from Lee's lap.  Lee punched him several more times.  Petitioner testified that he wanted to escape but did not think he could before Lee punched him again.  So, Petitioner testified, he fired the gun just as a distraction to give himself time to get out of the car.  Petitioner did not know Lee had been shot.  He exited the car, untied his dogs, and threw the gun in a vacant field.  He was arrested

3

one week later.

Following a jury trial in Genesee County Circuit Court, Petitioner was convicted of second-degree murder, being a felon in possession of a firearm, and felony firearm.  On October 16, 2009, he was sentenced as a fourth habitual offender, Mich. Comp. Laws § 769.12, to concurrent sentences of 50 to 75 years for second-degree murder and 5 to 15 for felon in possession, to be served consecutively to 2 years for felony-firearm.

Petitioner filed an appeal of right, raising these claims: (i) the trial court erred in instructing the jury it could consider whether Petitioner had a duty to retreat; (ii) the prosecutor improperly disparaged defense counsel and defendant; (iii) Petitioner received ineffective assistance of counsel; and (iv) the cumulative effect of the errors denied Petitioner his right to a fair trial.  Petitioner filed a pro per supplemental brief raising additional claims of prosecutorial misconduct and ineffective assistance of counsel and a claim that his right to a public trial was violated when the court closed the courtroom during *voir dire*.  The Michigan Court of Appeals affirmed Petitioner's convictions.  *People v. Edwards*, No. 294826, 2011 WL 2462729 (Mich. Ct. App. June 21, 2011).  Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals, five additional ineffective

4

assistance of counsel claims, and one prosecutorial misconduct claim.  The

Michigan Supreme Court denied leave to appeal, *People v. Edwards*, 493 Mich.

881 (Mich. Nov. 7, 2012), and denied a motion for reconsideration.  *People v.*

*Edwards*, 493 Mich. 931 (Mich. Jan. 25, 2013).

Petitioner then filed a motion for relief from judgment in the trial court.  He

sought relief on the grounds that counsel was ineffective in failing to object to the

prosecution's burden shifting, failing to conduct a reasonable investigation,

misrepresenting the facts in evidence, denying Petitioner his right to testify on his

own behalf, failing to file a motion to quash, and giving erroneous advice

regarding Petitioner's self-defense claim.  He also argued that appellate counsel

was ineffective and that the cumulative effect of these errors denied him his right

to a fair trial.  The trial court denied the motion.  *See* Op. & Order Deny. Mot. For

Relief from J., *People v. Edwards*, No. 08-023861-FC (Genesee County Cir. Ct.

Aug. 14, 2017) (ECF No. 14-28).   The Michigan Court of Appeals and Michigan

Supreme Court denied Petitioner leave to appeal.  *People v. Edwards*, No. 341475

(Mich. Ct. App. May 11, 2018); *People v. Edwards* 503 Mich. 929 (Mich. 2018).

Petitioner then filed the pending petition for a writ of habeas corpus, and,

later, a supplement to the petition.  The petition raises these claims:

I.      Trial counsel was ineffective in failing to represent Defendant's
        complete defense and failing to present evidence that would

5

have changed the outcome of trial.

II.   Trial counsel actively represented a conflict of interest by creating a defense that lapsed [sic] his representation and affected the manner in which counsel conducted the defense.

III.  Trial counsel failed to consult with Edwards and advise him of counsel's decision to alter the defense.

IV.  Trial counsel failed to present eyewitness testimony of Defendant's injuries.

V.   Counsel failed to request instructions on the lesser included offense of involuntary manslaughter.

VI.  Trial counsel was ineffective when he failed to conduct a reasonable investigation.

VII. Trial counsel was ineffective when he misrepresented facts in evidence.

VIII. Trial counsel denied Edwards his due process right to testify in his own behalf.

IX.  Trial counsel's advice regarding the self defense claim constituted deficient performance that caused Edwards to reject a plea offer.

X.   Trial counsel was ineffective when he failed to file a motion to quash.

XI.  Trial counsel was ineffective when he failed to object to the prosecutor's improper burden shifting.

XII. The prosecutor committed misconduct such that a new trial is required when he argued facts not of the record.

XIII. The prosecutor unconstitutionally shifted the burden of proof in

violation of the Due Process Clause.

XIV. The cumulative effect of these errors requires that Edwards be granted a new trial.

XV. Edwards carried his burden to excuse any alleged procedural default by demonstrating "actual innocence," "cause", & "prejudice", and ineffective assistance of appellate counsel.

XVI. Trial counsel was ineffective in failing to object to the prosecutor's misconduct.

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 408.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102.  Further, "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.*

A state court's factual determinations are entitled to a presumption of correctness on federal habeas review. See 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v.*

*Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).  Moreover, habeas review is "limited to the record that was before the state court."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III.  Discussion

### A.    Ineffective Assistance of Counsel (Claims I through XI, XVI)

Petitioner raises twelve claims of ineffective assistance of counsel. Respondent argues that six of these claims are procedurally defaulted and that all of the claims are meritless.

Under the doctrine of procedural default, a federal court generally may not review claims that a habeas petitioner has defaulted in state court "pursuant to an independent and adequate state procedural rule."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  The procedural default doctrine is not jurisdictional and the Court may bypass this question where proceeding directly to the merits is more efficient.  *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [merits] question priority ..., if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.").  The Court will proceed to the merits of Petitioner's claims without deciding the procedural-default issue.

A violation of the Sixth Amendment right to effective assistance of counsel

is established where an attorney's performance was deficient and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To establish that an attorney's deficient performance prejudiced the defense, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

The standard for obtaining habeas corpus relief is "'difficult to meet.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

## 1.

First, Petitioner maintains that counsel failed to present a complete defense.

He argues that counsel failed to argue that the victim's vehicle was parked on the street at the time of the shooting, rather than in the driveway of 906 East York.  In his recorded police interview which was played for the jury, Petitioner stated that the victim's vehicle was parked in the street.  So this contention, in fact, was placed before the jury.  Police photographs showed the victim's vehicle in the driveway and multiple witnesses also testified it was parked in the driveway.  It was reasonable for defense counsel not to further highlight testimony that conflicted with photographic evidence and witness testimony.  Petitioner also fails to explain what additional evidence could have been admitted to show the car's location.  In addition, whether the vehicle was in the street or the driveway does not have any measurable impact on the defense.  Petitioner admitted to firing a gun while in the car with Lee.  He fails to explain how the exact location of the car impacted the strength of his defense.

Petitioner also claims counsel erred in failing to present evidence regarding a second shell casing.  The victim's mother, Maxine Lee, was given a shell casing by her son Ali.  Ali told her he found it on the street near where Petitioner said Lee's vehicle was located.  In support of this claim, Petitioner submitted an unnotarized statement from Maxine Lee.  The Michigan Court of Appeals declined to consider Maxine Lee's statement because it did not appear in the trial court record and

11

Petitioner failed to develop an evidentiary record regarding this claim.

Additionally, the state court held that defense counsel "competently, professionally

and thoroughly presented defendant's self-defense theory to the jury." *Edwards*,

2011 WL 2462729 at *11.

It was also reasonable for defense counsel not to present evidence of a

second shell casing.  Maxine Lee did not find the casing herself and therefore

could not personally attest to where and when it was found.  In addition, it is

unclear how evidence of a second shell casing would have assisted the defense.

The Michigan Court of Appeals' denial of this claim was reasonable.

## 2.

Petitioner argues that counsel was ineffective because he was loyal to the

prosecution and labored under a conflict of interest.

A criminal defendant is entitled to the effective assistance of counsel free

from conflict.  *Holloway v. Arkansas*, 435 U.S. 475, 483-84 (1978).  In *Cuyler v.

Sullivan*, 446 U.S. 335, 345-50 (1980), the Supreme Court held that prejudice is

presumed if counsel is burdened by an actual conflict of interest.  The presumption

of prejudice applies only if the defendant demonstrates that counsel: (1) "actively

represented conflicting interests;" *and* (2) that "an actual conflict of interest

adversely affected his lawyer's performance."  *Id.* at 350, 348.  The Michigan

Court of Appeals held that Petitioner failed to show "that any conflict of interest prevented defense counsel from suitably and vigorously representing" him. *Edwards*, 2011 WL 2462729 at *11. In his habeas petition, Petitioner fails to identify a conflict of interest and his allegation that counsel was concerned with supporting the prosecutor's case rather than presenting a strong defense is unsupported in the record. Habeas relief is denied on this claim.

### 3.

In his third ineffective assistance of counsel claim, Petitioner argues that defense counsel altered the defense theory from accident to self-defense without discussing the change with Petitioner and that the accident defense was the stronger defense and consistent with his police statement and trial testimony.

The trial court denied this claim when it denied Petitioner's motion for relief from judgment. (ECF No. 14-28, PageID.1988-89.) This decision was not contrary to, or an unreasonable application of, Supreme Court precedent. Counsel cannot be faulted for choosing the stronger of two defenses. Petitioner testified that he intentionally pulled the trigger because he wanted to give himself a chance to exit the vehicle. According to his testimony, he did not intend to shoot and kill the victim but he did intend to fire the gun. Self-defense better matched the defense's theory of the case – that Petitioner acted intentionally but justifiably.

Counsel did not perform deficiently in choosing to present the defense which was supported by Petitioner's own trial testimony. *Accord Graves v. Howerton*, 2013 WL 6068592, *3 (6th Cir. Feb. 28, 2013) (holding counsel was not ineffective for strategic decision to present self-defense theory because theory of self-defense aligned with defendant's own testimony).

Further, Petitioner has not shown he was prejudiced by counsel's decision. When an intentional act must be established as an element of a crime – as is the case with second-degree murder – satisfying the elements of the crime precludes an accident defense. *See People v. Hess*, 214 Mich. App. 33, 37 (1995). That is, accident is not regarded as an affirmative defense; rather, it constitutes the negation of an element. Jurors were instructed on the elements of second-degree murder including the requirement that the prosecutor prove beyond a reasonable doubt that Petitioner "intended to kill, or he intended to do great bodily harm to Tyrell Lee, or he knowingly created a very high risk of death or great bodily harm, knowing that death or such harm would be the likely result of his actions." (ECF No. 14-17, PageID.1742.) Jurors are presumed to follow their instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Here, by finding Petitioner guilty of second-degree murder, the jury necessarily found that Petitioner committed an intentional act. Consequently, the jury necessarily found that the killing was not

14

accidental. Therefore, Petitioner fails to establish prejudice.

**4.**

Next, Petitioner claims that counsel was ineffective for failing to request an involuntary manslaughter instruction.  The Michigan Court of Appeals denied this claim based upon its holding that the facts did not support such an instruction. *Edwards*, 2011 WL 2462729 at *12.  The state court explained that involuntary manslaughter is "the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm." *Id.*  Petitioner consistently testified that he intentionally pulled the trigger.  The "act of pulling the trigger on a gun in close proximity to the victim amounted to an unlawful act that 'tend[ed] to cause death or great bodily harm,' rendering inapplicable the elements of involuntary manslaughter." *Id.*

The state court's decision on the propriety of a jury instruction is a matter of state law the Court is bound to follow.  *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012).  Thus, Petitioner cannot show that counsel was ineffective in failing to request the involuntary manslaughter instruction where the Michigan Court of Appeals held that the instruction was not justified under state law.

**5.**

15

Petitioner next argues that counsel was ineffective in failing to conduct a reasonable investigation.  Much of this claim focuses on counsel's decision to present a self-defense argument.  As discussed above, Petitioner has not shown that counsel was ineffective for choosing to present a self-defense argument.  Petitioner also fails to show what additional information counsel could have obtained.  The record shows that counsel consulted with Petitioner, prepared a cogent and competent defense, and was well-prepared to present the case.

Petitioner also argues that counsel should have investigated the location of Lee's car at the time of the shooting.  As Petitioner points out, only he and Lee were present at the shooting.  The jury heard Petitioner's statement about where the car was located through his interview with police and his testimony.  Petitioner fails to show what additional information counsel could have obtained.  *See Wogenstahl v. Mitchell*, 668 F.3d 307, 335-36 (6th Cir. 2012) ("[C]onclusory and perfunctory ... claims of [ineffective assistance of counsel] are insufficient to overcome the presumption of reasonable professional assistance and are insufficient to warrant habeas relief.").

Finally, Petitioner maintains that counsel was ineffective for failing to conduct a proper investigation of the victim's reputation. At the same time, he acknowledges that counsel arranged for an investigator to look into the victim's

16

character and reputation in the neighborhood.  Petitioner fails to allege what additional steps counsel should have taken to investigate the victim.  Petitioner fails to show the state court's denial of this claim was unreasonable.

**6.**

Petitioner argues that counsel performed deficiently for failing to present eyewitness testimony about Petitioner's injuries.  Specifically, he argues that counsel should have called Carolyn Edwards and Victoria McCree.  In support of this argument, Petitioner submitted letters from Carolyn Edwards (his mother) and Victoria McCree.  (ECF No. 2-2, PageID.255-57.)  Neither letter is notarized.  In her letter dated July 21, 2010, Carolyn Edwards writes that, on the morning of October 9, 2008, she observed her son with a scar under his eye, facial swelling, and bruises around his neck. (*Id.* at 255.)  The second letter, from Victoria McCree, is undated.  (*Id.* at 257.)  McCree wrote that "[a]fter everything happened," she saw Petitioner with a black mark under his eye, two broken front teeth, and bruising on his neck as if he had been choked.  (*Id.*)

The letters are of questionable reliability because they are not notarized, McCree's is undated, and Carolyn Edwards' letter was written over 18 months after the shooting.  *See Clark v. Waller*, 490 F.3d 51, 553, 558 (6th Cir. 2007) (unauthenticated affidavit from person petitioner claimed should have been called

17

as a defense witness could not support ineffective assistance of counsel claim).

Additionally, counsel provided a reasonable explanation for not calling these

witnesses.  He explained that McCree was an unwilling witness afraid to testify

because her house had been shot up after the killing.  (ECF No. 202, PageID.283.)

He declined to call Petitioner's mother because he concluded she would not have

done well on cross-examination and believed she might hurt the defense.  (*Id.*)

Based upon these considerations, it was not unreasonable for the state court to

conclude that counsel's decision not to call these witnesses was the result of

reasonable trial strategy.

### 7.

Petitioner argues that counsel was ineffective for promising the jury that

they would hear testimony that the victim was "[n]ot a good guy", but failing to

present that testimony.  (ECF No. 14-13, PageID.1038.)  In fact, counsel elicited

testimony that the victim was "hard hitting" and "acts out – acts out ... to people he

know[s].") (ECF No. 14-16, PageID.1585.)  Petitioner fails to show that counsel

performed deficiently by not presenting additional testimony on the victim's

reputation or that he was prejudiced by counsel's decision.

### 8.

Petitioner maintains that counsel's failure to adequately assess the strength

of a self-defense claim and failure to investigate Petitioner's defense of accident negatively impacted plea negotiations. The Sixth Amendment right to counsel extends to the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 163 (2012). A criminal defendant is "'entitled to the effective assistance of competent counsel'" during plea negotiations. *Id.* at 162 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). To establish prejudice in the context of a rejected plea offer, a defendant must show that but for the ineffective advice of counsel, there is a reasonable probability that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances. *Id.* at 164. The defendant must also show that the court would have accepted its terms, and that the conviction or sentence, or both, would have been less severe than under the judgment and sentence that in fact were imposed. *Id.*

At a pretrial hearing held a day before trial, defense counsel placed on the record the details of plea negotiations. (ECF No. 14-11, PageID.803-806.) The prosecutor originally offered a plea to manslaughter as a second habitual offender, and felony firearm, with a guidelines score of 36 to 88 months or possibly 43 to 107 months plus two years for felony firearm. (*Id.* at 804.) Petitioner rejected that offer. The prosecutor then discussed the possibility of a plea to manslaughter without the habitual offender enhancement and an agreement to drop the felony-

firearm charge, but the prosecutor was unable to get approval for that offer.  (*Id.* at

805.)  The prosecutor indicated the original offer was still available, but Petitioner

remained unwilling to accept that offer.  (*Id.* at 804-05.)  Defense counsel indicated

on the record that he and Petitioner discussed the strengths and weaknesses of the

prosecution's case when discussing the plea offers.  (*Id.* at 804.)  There is no

evidence in the record that defense counsel promised Petitioner that he would

succeed at trial, and that he should reject the plea offer.  Counsel does not act

ineffectively in evaluating a defendant's chances of acquittal if he proceeds to trial.

Even if defense counsel made an "erroneous strategic prediction" concerning the

likely outcome of the trial, this is not, by itself, proof of deficiency. *Lafler*, 566

U.S. at 174.

Petitioner maintains that, if counsel had undertaken adequate investigation,

counsel would have been able to challenge all aspects of the prosecution's case and

to secure a more favorable plea offer, which Petitioner would have accepted.

Petitioner does not allege that counsel failed to communicate a plea offer to him

nor does he establish that counsel incorrectly advised him on the law.  In his

affidavit, Petitioner details the complex plea negotiations undertaken.  Counsel was

clearly actively engaged in negotiations and mediated on Petitioner's behalf.

Petitioner fails to substantiate his claim that, had counsel undertaken a more

effective investigation, the prosecutor would have reassessed the strength of its case and determined a better plea offer was warranted.  The trial court's decision that counsel was not ineffective in this regard is amply supported in the record.

## 9.

Counsel, Petitioner argues, also denied him the right to testify in his own defense.  Petitioner does not assert that counsel prevented him from taking the stand because he did, in fact, testify in his own defense.  Instead, Petitioner maintains that defense counsel did not ask questions which would have elicited testimony supporting his defense.  In particular and, according to Petitioner's argument, most importantly, counsel did not ask Petitioner where the victim's car was parked when Petitioner entered the vehicle.  Petitioner maintains that counsel steered the testimony in a different direction when it appeared Petitioner might testify as to the car's location.

The record does not support Petitioner's argument that counsel intentionally steered his testimony away from the car's location.  But even if counsel did so, Petitioner fails to show how his defense would have been bolstered by his trial testimony that the vehicle was located in the street, particularly where, as here, Petitioner's statement to police included this information.  Relief is denied on this claim.

**10.**

Petitioner maintains that counsel was ineffective for failing to challenge submission of the first-degree premeditated murder charge to the jury because it was not supported by sufficient evidence.  The Sixth Circuit Court of Appeals has held that any error in the submission to a jury of a criminal charge is harmless where, as in this case, the defendant was acquitted of that charge.  *Pyne v. Harry*, No. 18-2347, 2019 WL 2208303, at *3 (6th Cir. Apr. 2, 2019) (citing *Daniels v. Burke*, 83 F.3d 760, 765 n.4 (6th Cir. 1996)).

**11.**

Finally, Petitioner argues counsel was ineffective for failing to object to multiple instances of misconduct.  As discussed below, Petitioner fails to show that the prosecutor committed misconduct.  Counsel cannot be held ineffective for failing to object to conduct that was not improper.  *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir.2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial.").

**B.  Prosecutorial Misconduct**

Petitioner next alleges that the prosecutor committed misconduct by arguing facts not supported by the evidence and improperly shifting the burden of proof.

A prosecutor's misconduct violates a criminal defendant's constitutional

22

rights if it "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Prosecutorial misconduct entails much more than conduct that is "undesirable or even universally condemned." *Id.* at 181 (internal quotation omitted).  To constitute a due process violation, the conduct must have been "so egregious so as to render the entire trial fundamentally unfair." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (citations omitted).  The *Darden* standard "is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) (alteration in original)).  "That leeway increases in assessing a state court's ruling under AEDPA," because the court "'cannot set aside a state court's conclusion on a federal prosecutorial-misconduct claim unless a petitioner cites ... other Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable.'" *Stewart v. Trierweiler*, 867 F.3d 633, 638-39 (6th Cir. 2017) (quoting *Trimble v. Bobby*, 804 F.3d 767, 783 (6th Cir. 2015)).

Petitioner argues that, in closing argument, the prosecutor argued facts that were not supported by the evidence.  It is improper for a prosecutor to reference

facts not supported by the evidence presented at trial, but a prosecutor may advance arguments based on reasonable inferences drawn from properly-introduced evidence. *Stermer v. Warren*, 959 F.3d 704, 728 (6th Cir. 2020).

First, he argues that the prosecutor improperly stated that whatever was in the victim's car was missing and that Petitioner pulled apart portions of the vehicle, implying a robbery had occurred even though there was no testimony that anything was missing from the vehicle. The Michigan Court of Appeals held that the prosecutor's argument was not improper because it was "premised on facts in the record and reasonable inferences arising from these facts." *Edwards*, 2011 WL 2462729 at *7. Specifically, the state court held that the testimony that the gearshift was askew and that the passenger-side door paneling had sustained damage as if it had been pried open were sufficient to support the prosecutor's theory that a robbery had occurred. *Id.* Petitioner fails to show that the state court's conclusion was unreasonable or that the prosecutor's argument deprived him of a fair trial.

Next, Petitioner argues that the prosecutor improperly stated that Petitioner knew the victim was "sitting up there" and that was where the victim always was. (ECF No. 14-16, PageID.1640.) Petitioner disagreed with the claim that he testified that the victim was always around the house where the shooting occurred.

24

The Michigan Court of Appeals held that the prosecutor's argument was rooted in

Petitioner's testimony:

> Our review of the record reveals that the prosecutor's argument had a foundation in defendant's testimony. Defendant explained at trial that the shooting had happened near 906 East York Street, in a neighborhood where he had lived for a long time and that he traversed by foot "all the time." Defendant expressed that he had known the occupants of 906 East York, Michael Johnson and Ricky Johnson, for around 12 years, the Johnsons and the victim were friends, and defendant's acquaintance with the victim stretched back approximately 15 years. In defendant's direct examination, when asked whether he knew if the victim "h[u]ng out at 9–0–6 East York," defendant replied, "Outside. Basically, it be next door." Defendant later specified the location where the victim routinely parked his van near 906 East York and his knowledge that the victim often played "a video game TV in" his van. In summary, the prosecutor accurately argued on the basis of defendant's testimony and reasonable inferences flowing from defendant's testimony that defendant knew the victim always or frequently spent time near 906 East York.

*Edwards*, 2011 WL 2462729, at *8.

Petitioner's trial testimony and that of Rickey Johnson that the victim was

"always there", taken together, sufficiently supported the prosecutor's argument.

(ECF No. 14-14, PageID.1235.)  The prosecutor's argument did not render

Petitioner's trial fundamentally unfair.

Finally, Petitioner argues that the prosecutor inaccurately argued that

Petitioner admitted to pointing the gun at the victim and shooting.  This argument

mischaracterized Petitioner's testimony that he did not shoot at the victim.

25

Nevertheless, the state court held that this misstatement did not deprive Petitioner his right to a fair trial. The state court's adjudication of this claim was not objectively unreasonable. As correctly stated by the state court, the trial court instructed the jury that the attorneys' arguments were not evidence and that the jurors should only base their verdict on the admissible evidence. Juries are presumed to follow a trial court's instructions. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Given the trial court's instructions and the isolated nature of the prosecutor's misstatement, the Michigan Court of Appeals' adjudication of this claim was not objectively unreasonable.

Petitioner next argues that the prosecutor improperly shifted the burden of proof. The prosecutor questioned Petitioner and a police sergeant about the failure to produce the gun used in the shooting and the sweatshirt that Petitioner wore that day. The prosecution also suggested during closing arguments that Petitioner hid these items after the shooting to cover up the murder. The last state court to issue a reasoned opinion denying this claim was the trial court, which held that the prosecutor's purpose in discussing the absence of these two items was not to shift the burden of proof but to argue that the actual evidence did not comport with Petitioner's story. The trial court explained:

> The prosecution's theory was that the killing was not an act of self-defense. When Defendant testified that he threw the gun into a

vacant field immediately after the shooting and did not call police, the prosecutor used this testimony to attack Defendant's self-defense claim. It was reasonable for the prosecutor to question why Defendant disposed of the gun and avoided the police if he had really only acted in self-defense. The purpose of this line of questioning was not to shift the burden of proof onto the Defendant, but to rebut Defendant's self-defense argument and discredit his story. In this way, the prosecution could more easily meet its burden of proof because, as the prosecutor argued, it was reasonable to infer from Defendant's testimony that the killing was not done in self-defense since Defendant admitted to discarding the gun.

This same reasoning applies to the prosecutor's comments about the sweatshirt Defendant was wearing at the time of the shooting. Defendant testified that he placed the sweatshirt behind a couch at his mother's house after the shooting and never saw it again. By asking about the sweatshirt, the prosecutor was not attempting to force Defendant to produce the sweatshirt in order to prove his self-defense claim. Instead, the prosecutor was implying that Defendant had intentionally hidden the sweatshirt because Defendant knew he was guilty and did not want to get caught. If Defendant had done nothing wrong, then he would not have needed to hide his sweatshirt. A reasonable inference, the prosecutor argued, would be that Defendant had hidden his sweatshirt to cover up the killing, something he would not have done had the killing really been in self-defense.

By testifying that he had shot the victim in self-defense, Defendant opened the door to the prosecution's line of questioning about the location of the gun and the sweatshirt. At no point did the prosecution argue or imply that Defendant must produce the items in order to prove his innocence. Therefore, the prosecutor's questions were not improper, and no prosecutorial misconduct occurred.

(8/14/17 Genesee Cir. Ct. Order at 2–3.)

In the context of the prosecutor's entire argument and in light of the jury

instructions which clearly set forth the burden of proof, the Michigan Court of

Appeals' decision was not contrary to or an unreasonable application of *Darden*.

## C.  Ineffective Assistance of Appellate Counsel

In his fifteenth claim, Petitioner claims that his appellate attorney was ineffective in failing to raise on direct appeal the claims raised in this habeas petition and that counsel's ineffectiveness establishes cause and prejudice to excuse his default.  A petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  *Jones v. Barnes*, 463 U.S. 745, 754 (1983).  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

The claims raised in this petition and on collateral review in state court are meritless.  Appellate counsel need not raise non-meritorious claims on appeal. *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Accordingly, the Court will deny habeas corpus relief on this claim.

28

### D.  Cumulative Effect of Alleged Errors

Finally, Petitioner asserts that he is entitled to habeas relief based on cumulative error.  The Court rejects Petitioner's claim because the Supreme Court has never held that cumulative errors may form the basis for issuance of a writ of habeas corpus.  *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002); s*ee also Daniels v. Jackson*, 2018 WL 4621942, *6 (6th Cir. July 17, 2018) ((""[T]he law of [the Sixth Circuit] is that cumulative error claims are not cognizable on habeas [review] because the Supreme Court has not spoken on this issue."") (quoting *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006)).  This cumulative-error claim, therefore, is not cognizable on habeas corpus review.

### IV.  Certificate of Appealability and Leave to Proceed *In Forma Pauperis* on Appeal

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253.  A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U .S.C. § 2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citation omitted).  In this case, the Court

concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability. If Petitioner nonetheless chooses to appeal, he may proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3).

## V.  Conclusion

For the reasons set forth above, the Court denies the petition for writ of habeas corpus, declines to issue a certificate of appealability, and grants leave to appeal *in forma pauperis*.

The Court grants Petitioner's motions to amend **(ECF Nos. 32, 36)**. The Court denies as moot Petitioner's motion for bond pending resolution of petition **(ECF No. 34)** and motion for immediate consideration **(ECF No. 35)**.

SO ORDERED.

s/Denise Page Hood
Denise Page Hood
United States District Judge

DATED: March 31, 2022